The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw not even their attention, for the Court is now sitting. God save the United States and His Honorable Court. Be seated, please. I understand this is the inauguration of this courtroom. It's been redone. It was originally a trial courtroom, Judge Marich's courtroom, and I don't know what other judges had it. So you two will be the first ones to argue in the renovated courtroom. The only thing we're missing, Mr. Clerk, are a couple of lamps. Like on the red courtroom. Yes, sir. All right. We'll hear United States v. Barlow, and Ms. Gleason will hear from you first. Thank you, Your Honor. If it pleases the Court, I'm Kathleen Gleason, and I represent the appellant in this case, Camden Barlow. I want to start out being clear that post-release supervision in North Carolina is supervised release. When Mr. Barlow was sentenced, the sentencing judge could not sentence him to a term of imprisonment that exceeded one year. Supervised release isn't? Well, that begs the question. That's the ultimate question, isn't it? It is, Your Honor. And if you look at the chart, the chart says up to 19 months. Yes, sir. And then you look, your theory is you look under the Justice Reinvestment Act, and that takes off nine months, mandatory. Yes, sir. So the 19 months goes back to 10 months, and that doesn't satisfy the prerequisite. That's correct, Your Honor. But if you have two sentences that are consecutive, the same act says you only apply it to the second sentence so that the first sentence stays at the 19 months. Isn't that right? That is how it operates, Your Honor, yes. Well, it's under that act. I mean, it says we are going to, you start with 19 months. Your theory is we reduce the 19 months because of the Justice Reinvestment Act by nine months, but you have to apply all its terms. And it says whenever you have two sentences that are consecutive, the first sentence, it doesn't apply to it. It applies to the second one. So that in this case, with respect to both the two consecutive sentences, breaking and entering and fleeing, the first, they were consecutive sentences, so the first one in each case goes up to 19 months or 14 months in one case and 19 in the other, right? On the chart. Yes, sir. And then the Justice Reinvestment Act doesn't reduce that one. That is how it operates. And, Your Honor, what happens when an individual is sentenced in North Carolina is similar to what happens in the federal court and in any court. A person is given a sentence, and the sentence consists of different types of punishment. You've got the term of imprisonment here punishment. You've got the supervised release punishment. You've got a fine punishment. You've got perhaps a restitution. But the sentence itself contains a number of types of punishment. But we've made clear that you always look at the potential sentence for that particular defendant. But respectfully, Your Honor, what we look at is— We don't look at the actual sentence. We don't look actually, Your Honor, at the potential sentence. What we look at, Your Honor, Congress has mandated that we look at the potential term of imprisonment. Right. Fair enough. The sentence includes a number of punishments. Fair enough. And that we're looking at the term of imprisonment. Fair enough. And the supervised release portion of the punishment— Well, I'm granting you that under my hypothetical. I'm just starting—there's two issues with respect to this. One is whether the supervised release is more like probation or more like supervised release. That's one issue you briefed, which is a very difficult issue. But the second issue seems to me is more straightforward. And that is, even if we were to grant the nine months off, under the potential sentencing for this defendant, the first offense doesn't get a reduction. Just the second does. Yes, Your Honor, and Your Honor is correct. The first nine months could be served in prison. It's only nine months once. That's right, Your Honor. And I actually think that that is problematic for the government because if the government is correct, and what you see on the face of the judgment, which is a form and not the law, and this court must look at the law behind the judgment. If a person looks at the face of the judgment, North Carolina's law says that when we run terms consecutively, we add the minimums and we add the maximums, and it becomes a single sentence. If the government is correct and that the maximum in this case is 19 months, which would be in the presumptive range— Actually, the maximum if you count both sentences, 29 months, reduces it to 20. That's correct, Your Honor. And so if the government is right that this is the maximum term of imprisonment, under North Carolina law, the rest of that maximum term of imprisonment that we're looking at vanishes. And if that's a term of imprisonment, it can't happen. When it can happen is if that term is superficial. But I'm granting you that. I'm just saying how do you answer the notion that when you apply that act, it doesn't universally take nine months off of everything. It takes nine months off in consecutive sentences, only the second sentence. Well, Your Honor, it is not that it takes nine months. What it is is that we've got the term of— Well, I'm granting you when it says takes nine months, I'm granting you your argument for purposes of this discussion that the supervised release is a reduction in imprisonment. Your Honor, what I am arguing is that the term of imprisonment is at maximum 10 months and that there's additionally a nine months of supervised release, not that it's subtracted. That isn't what it says on its face. The grid says 19 months. Yes, sir. The judgment in this case said 19 months. Yes, sir. On the face of it. Those are both consistent. Your argument is the 19 months fails to take into account the Justice Reinvestment Act. And the Justice Reinvestment Act converts the last nine months to supervised release under certain circumstances. And you argue that that supervised release is not imprisonment. Yes, sir. But in this case, that nine months comes off only on—in two consecutive sentences comes off only off the second one. By its terms. By the second, yes, Your Honor, or the third. And, Your Honor, and that I think is part and parcel of my argument is that it is true that the North Carolina statute and the sentencing grid call this in some places the maximum term of imprisonment. But we need to look at the statute and read it in peri materia. And if we consider that 19 months to be the maximum term of imprisonment that Mr. Barlow was sentenced to when he was sentenced, it reads out of the statute the other provisions that say shall be released— Not on the first sentence. You shall not be released on the first sentence. Yes, Your Honor. Respectfully, Your Honor, in section 15A-1368.2, and I have that in the addendum to the brief, Your Honor. It's at page 13 of the addendum to the opening brief. Oh, I'm sorry, that's consecutive. It is at page 15, Your Honor. It says under the statute, it says when a prisoner is serving consecutive—this is the Justice Reinvestment Act. Yes, Your Honor. When a prisoner is serving consecutive prison terms, the maximum imposed term, for purposes of this article, is the sum of all maximum terms imposed in the court judgment or judgments less 9 months for each of the second and subsequent sentences imposed. That's correct, Your Honor. But if you turn to section 15A-1368.2, which is at page 15 of the addendum, the legislature mandated that a prisoner to whom this article applies, which is the Structured Sentencing Act as amended by Justice Reinvestment Act, shall be released from prison for post-release supervision on the date equivalent to his maximum imposed prison term, and if you jump to the bottom, the sentences we're talking about, less 9 months. And then B says a prisoner shall not refuse post-release supervision. I understand that, but it says that, but it says under these terms. I mean, it doesn't say it universally. It says when there's two consecutive terms, the very same page. I'm reading the act right here. And the very same page says when you have two consecutive terms, the supervised release comes only on the second and subsequent sentences. 15A-1368.2 applies to all sentences. Had Mr. Bilo had a single sentence, he would have been released at the latest at 10 months. If he had one breaking and entering. Yes, sir. It would have been 19 months less the supervised release for 10 months in prison, right? That is correct, Your Honor. Okay. I follow you on that. When he is sentenced to consecutive terms, he serves 29 months, less 9 months. They say add the two together and subtract it from the second or subsequent. That's correct, Your Honor. Well, now how can you exclude that statutory term from the very same statute you're quoting? I don't intend to, Your Honor. And what happened in Mr. Bilo's actual case for the fleets who elude, he was sentenced to the consecutive 4 to 5 months terms. He served no more than 10 months, was released, committed another violation, which led to this conviction, and was returned for 9 months. There was no way for the sentencing judge, when he was sentenced, to sentence him to serve a term of imprisonment, in that case, more than 10 months. Although we would, of course, look to the presumptive range in that case, and it would be no more than 20 months in the presumptive range. And this is important, Your Honor, because what Simmons has told us is that, and let me be clear, this is a Simmons test. The question is, what's the level of the offense? What's the offender's prior record level? And were there a finding or admission of aggravating factors? And what can the sentencing judge, what term of imprisonment can the sentencing judge sentence Mr. Bilo when he was sentenced? There's no dispute in the record about that. I mean, this dispute is 10 to 19 months on the grid. That's under the Simmons. That's the potential, plus the application of this act, this 2011 act, this Justice Reinvestment Act. And so the only question is, what does the Adjustment Reinvestment Act do to that 10 to 19 months? Well, I think, respectfully, Your Honor, that one of the things that Simmons, the fourth piece that Simmons requires, informed by caricature and recendo, is that we don't engage in hypotheticals. And in that case, it was a hypothetical worst-case offender. And in this case, we don't engage in hypotheticals about this individual's worst-case future. No, this is not a worst-case. This is the actual sentence. The judge sentenced him to two consecutive terms. The judge could have sentenced him at that time, based on the record before the judge, could have sentenced him to 29 months, and he would have then served 20 months because of the supervised release. Your Honor, that's absolutely correct. He could have sentenced him to 29 months. The argument that we have, Your Honor, is that the nine-month piece of that punishment is not the term of imprisonment. Fair enough. That takes you to 20 months. How do you address that? And of that 20 months, 19, I mean, the first sentence is not reduced by supervised release. It's the second piece. Your Honor, the first is, it is reduced by, there's one term of supervised release when those sentences are run consecutively. There's a single term. So the term of imprisonment, the maximum time that Mr. Barlow could serve in prison before they kick him out, is 20 months. He cannot serve a day over 20. He's released to supervised release. The problem with your argument is you're mistaking what we look for in Simmons. It's not whether the, what we look for is how long he's punishable for, and he was punishable by more than one year, even if he just had one crime. I mean, that's just all she wrote. I understand that the legislature enacted this, and I would be interested if they did this in response to Simmons, because they weren't excited about Simmons. You can understand why they weren't. So they revised all their statutes in this way, and so that you have this. And for this crime, he gets, I understand, in actual fact, he's imprisoned for, let's say, nine months, and then he gets the addition that he gets out. But if he does one thing wrong, he goes back, not a crime, but any other thing that they want to, he goes back in for his sentence for the original crime. So he is able to be sentenced for more than one year. That's what this scheme does, and that's what Simmons talks about. That's the ability. And just very briefly, Governor Perdue went to the folks who have set up this Justice Reinvestment Act structure across the United States in 2009. I would be really very interested in that, because obviously the statute does a whole bunch of other things, remedial things. Was it intended to deal with the Simmons problem as well? It was enacted before the Simmons opinion issue. It was enacted in, I think it was June of 2011, and it was signed into law. Your Honor, if I may address the issue. So it wasn't, it had nothing to do with Simmons? There's nothing in the legislative history that says that it did. I know there's not. I would be asking that, because I looked at the legislative history. And I frankly can't answer that. You were a resident of North Carolina, right? So you are involved in this field, and it just seemed to me that there was a huge uproar about Simmons. Yes, Your Honor. That maybe this legislation. The timing is interesting, but there's nothing that anyone has found that says it was reactionary. All right. But to address the punishment issue, Your Honor, rather than Simmons,  really is a hard question, Your Honor, considering what could happen to someone in the future is a HARP issue. And this Court has said that HARP is no longer good law. Well, there is some indication in extrinsic documents, for whatever they're worth, that certainly in the implementation evaluation report from the DAC, that said that what someone goes back on is to activate their earlier sentence. Exactly. Yes, Your Honor. And that's exactly what happens with supervised release. The sentence includes these different pieces of punishment. And when someone's, the district courts, the federal courts have been quite clear that if someone violates supervised release, It's a separate sentence. It is punishment for the original conviction. See, in your case, does your case where you started out saying this is exactly like supervised release, does your case rise and fall on us deciding that this is exactly like supervised release? Because it's not. But just by giving you a little clue about what your answer should be. Yes, Your Honor. I think it's the closest analogy that we have, Your Honor, is to supervised release and the separate punishments in a sentence. Because there's no question that the sentence is 19 months. The question is, could Mr. Barlow be sentenced to a term of imprisonment when he was sentenced in excess of a year? And Mr. Barlow could not. It took some later act that he may or may not do. The question is whether his crime of conviction was punishable by more than one year. That's the question. Yes, Your Honor. And that does begin to circle back to Hart. Well, that's the question that we talked about in Simmons. That's the question. And for Mr. Barlow and anyone standing in his shoes, the answer is no, it is not. The sentencing judge cannot send him to prison for more than 10 months. The nine months isn't a suspended sentence. It's not probation. It's not parole. It is post-release supervision. It never counts against the latter sentencing, correct? The nine months, you serve nine months regardless if you do return to sentence. If you're – my time is almost up. You can answer the question. Thank you, Your Honor. Like supervised release, the time is key to the seriousness of the offense. And in Mr. Barlow's case, he could not on a violation serve more than an extra nine months in prison, Your Honor. All right. Thank you. Thank you, Ms. Gleason. All right, Mr. Rand. Good morning, and may it please the Court, Ripley Rand for the United States. Ms. Rand, can I ask you at the outset, do you confine your argument to the actual facts of this case and having a recidivist sentence here? Or do you believe that this new statute imposes a sentence on everybody from the get-go of more than one year? Under 15A, 1340.17, when you look at the grid that y'all were talking about with Ms. Gleason, every sentence, every felony sentence under North Carolina law is now punishable by more than a year on the face of the statute itself. The very least punishment for the bottom of the range for a class I level one is 13 months. So I guess the answer to my question, it's always, you know, I'm a simple woman. It's helpful to give me the answer and then the explanation. Yes. So the answer is that you do not confine your argument here to a recidivist sentence. No, ma'am, I do not. Under this Court's decision in Simmons and under the rules set forth in the statute, the case law, and the federal case law, each of Mr. Barlow's prior convictions in this case was punishable by more than one year. And so the government would request that this Court affirm Barlow's conviction and then remand for sentencing pursuant to United States v. Johnson, et cetera, in our supplemental brief. With respect to one of the two main issues that Ms. Gleason focused on, she said her quote was, I want to make clear that post-release supervision is supervised release. The statutes indicate otherwise. Supervised release is a regime this Court has recognized as unique and is different from just regular old confinement. This Court in Buchanan said that supervised release is post-confinement supervision that's different from the term of imprisonment, and that's demonstrated by how the judgments are set out. In this case, the judgment was 180 months in prison plus five years of supervised release. That is not how post-release supervision is administered in North Carolina. In North Carolina, under 15A.1340.17, the judgment set forth one whole indivisible term of imprisonment. And in this case, Mr. Barlow's terms of imprisonment were four to 14 months on the felony speeding to the loo counts and eight to 19 months on the felony breaking and entering counts. Can I ask you, though, I think that the gist of her argument is that in practical terms they are the same. I understand that they're set forth differently in the statute, but are there practical differences? Are there practical differences between... The statute, what the statute does here and supervised release? There are practical differences in that federal supervised release, you come back to court on it, it's administered by the court as part of the court's supervision of supervised release, and the judge is the one who deals with violations and modifications and things like that. In post-release supervision, it's the administration of the sentence by the Division of Adult Correction. So it does not come back to court. The judge does not administer it. It's administered by the Division of Adult Correction. So he gets the nine months, and then he does something that would trigger this statute. How does that work? It doesn't go to a court? He does not go to court. The policeman just comes and says, that's it. I can hardly believe that. They go... Do they have a hearing before the agency? It's a similar process in that somebody is arrested on a violation report, but physically it goes over to Yonkers Road in Raleigh as opposed to going to any courthouse, and the post-release supervision and parole commission is the one that administers it. They have hearings, they're afforded lawyers. It's the same sort of process, but it's not a judicial process. It's always helpful to ask a question. I'm not sure I understood that from the briefs. Does it provide that it could be in front of a judicial officer? No. Post-release supervision is administered wholly by the post-release supervision and parole commission. So, again, we are not talking about a supervised release situation. This is different from that, both in its administration and in its statutory basis. As far as the sentences themselves, there is nothing different about the Post-Justice Reinvestment Act, or JRA for shorthand, the post-JRA sentences, other than the way that they are administered. The grid is the same. The sentences are set forth on the judgment the same way as they were before and the same way that they have been since structured sentencing started in 1995. It's not just merely adding on most of the sentence. The statute now, as we've talked about, sets forth the sentence itself. If you look at the joint appendix on pages 67, 69, 73, and 78, it demonstrates that it just says 8 to 19 months or 4 to 14 months. There's no reference to post-release supervision anywhere on those judgments, just like there's no reference to parole or anything like that from back in the fair sentencing days. It just sets forth one indivisible term of imprisonment on those judgments, the same way that it did in Mr. Simmons' case and all the other cases that this court has encountered in dealing with structured sentencing. As far as the administration of post-release supervision, it is administered like parole under North Carolina law. There is a physical release from incarceration after the execution of the sentence but before the expiration of the term. There's a period of supervision that, again, is administered by the commission. It's conditional and can be revoked for violations. The same types of rules on supervision and revocation apply, and the incarceration credit is assigned the same way under North Carolina law, under 15A 196.1. The statute provides the pretrial credit, revocation credit, active sentence credit, parole credit, post-release supervision credit. All that credit is assigned the same way, and the conclusion of post-release supervision, whether it's based on revocation or the successful completion, terminates the sentence. So it's not like, again, not like supervised release in that the term of imprisonment is concluded and then supervised release begins. The term of imprisonment is actually not concluded until after you've either completed post-release supervision successfully or after your term is revoked and you've served all your time. To the extent that this is still an issue as to whether this involves supervised release, there's one other important point that I want to make about that. If the General Assembly had wanted this to be like supervised release, they could have set it up that way. They could have left all the sentences in the statute, eight to ten months or four to five months and all that kind of stuff, and then added a nine-month term of post-release supervision at the end of that, but they didn't do that. They changed the maximum sentences in the statute. So the law, as Ms. Gleason referred to, the law is actually what's set forth on the grid. That's a statutory scheme. Can I ask you, this is modeled after laws in other states. Is that not right? I thought I gathered that. The Justice Reinvestment Act took different forms in different states, other places. I think that there are, I don't know how many, but there are multiple states that have enacted some form of the Justice Reinvestment Act. And so I believe that there are models in other states. I don't know if there was a specific type of model. Did they all contain this wrinkle that would put you outside of sentence? I don't understand the question. Well, the sentence is nine months plus six months. That's your sentence. Let's just assume that's what the numbers are, which it's always going to be more than a year. Even your sentence, it's always going to be more than a year on these crimes in which they've added the same factor. Is that a factor in all these other statutes? I have no idea. I have not researched the other statutes. To address the question that you asked, Ms. Gleason, about whether the legislature's enactment of this was somehow based on Simmons, as far as I know, it was completely coincidental. I don't think that the North Carolina General Assembly has a reputation for doing things on the fly fairly quickly, and this did happen. This was enacted around the time of the Simmons decision. I think it was completely coincidental and didn't have anything to do with Simmons. I was just curious. It really doesn't make any difference. It can do what they want. In her brief in here this morning, Ms. Gleason has asked the court to look at a whole lot of different things in determining what the effect of the Justice for Reinvestment Act is in this case. It's not really clear what the bright-line rule that she wants. This court set a bright-line rule. In Simmons, you look at the offense class, you look at the record level, and you look at the aggravators and then determine, based on the review of the statute under those three factors, what the potential maximum punishment is. It's not really clear what the bright-line rule that she wants this court to enact in this case is. It appears to be, no matter what the law says, no matter what the facts are, just as long as it didn't qualify under Simmons before, it doesn't qualify now. There are three main arguments that she makes in support of that theory. The first is that any felony sentence containing a component of post-release supervision, the incarceration for revocation is somehow different from that for pretrial credit. That is not what the statute says. She doesn't cite any authority to that effect. Again, under 15-196.1, the imprisonment credit for post-release supervision revocation is the same as that for pretrial credit, for active sentence credit, for parole or probation revocation credit. And that is demonstrated in the cases that the government cited in the attachment, the Siri Iron case, the Poor case, and the Langley case. The second argument that she makes is that any conduct of a defendant while on post-release supervision should be treated differently, and the revocation for that is separate somehow from the original sentence of imprisonment. Again, the courts have rejected that theory that revocation conduct should be treated differently. In the Woodruff case from this court, the Shelton and Johnson cases from the United States Supreme Court, and the Hewitt case from the North Carolina Supreme Court, all of those cases say that revocation is not punishment for new conduct, but a modification of the original sentence that was imposed by the court for the original conduct. The statutes are consistent with this. Again, 15-196.1 points to the post-revocation conduct as being attributed to the original conviction in the North Carolina Court of Appeals, and the Corcoran decision said that post-release supervision revocation involves the remaining portion of the original sentence. The third argument that she makes is the consecutive sentence argument, and that goes to, I think, what is the essential question in this case, is where do you look, at what stage in the case do you look in determining how a punishment is to be applied, and whether a crime is punishable by more than a year in prison. This court said in Simmons, and in the 200-plus cases in which it has interpreted Simmons since 2011, that you look at the time of conviction to determine whether a crime is punishable by more than a year. And the approach that Ms. Gleason takes is asking this court to look sometimes months or years down the road as to how a sentence is administered by the Division of Adult Correction as to whether that sentence is punishable by more than a year. Can I ask you one question? Is there a difference in your argument as to whether or not, let me ask you this, are these two arguments mutually exclusive, whether or not it's activating the original sentence, or whether it's a change of conditions of confinement? Is it one or the other? I'm not sure that I understand what you mean by mutually exclusive. Are you both activating the original sentence by changing the conditions, or are you activating the original sentence, or are you modifying your conditions as to some other sentence? Is it the same thing? You're activating it under a modified basis? I believe the way that the statute says it is, it all deals with the original conviction in the original sentence. So it's a modification in that the revocation is for the original term of imprisonment that was imposed by the court, if that answers your question. I guess I want to understand the nine-month term. If you are sent back to prison and you've served 30 days in your post-release supervision and you've served some jail time, you come back on not 30 days plus two weeks. You come back on 31 days. Is that correct? You come back on 31 days. That's correct. The supervision period and the term of imprisonment period are two different things, even though they are both nine months in length under the section. The common thread and the defendant's arguments in this case are all based on some analysis of how the sentence that the judge actually imposed is administered by the state. This is directly contrary to Simmons and all the post-Simmons cases, the Edmonds case, the Carr case, and the Balthenius case, all said that you look at the maximum possible punishment and not in any way the sentence that was actually imposed. The system that the defendant would have this court create is one where sentences that are less than a year on the face of the judgment qualify under Simmons, but sentences that are more than a year on the face of the judgment and where the defendant can actually serve more than a year do not qualify. In looking at where the court looks in determining whether a crime is punishable by more than a year, the government would ask that this court continue the approach that it's had in, again, more than 200 cases in which Simmons has been interpreted since 2011 and uphold the Simmons test in looking at the time of conviction in determining what the maximum possible punishment is and affirm Mr. Barlow's conviction. Again, the government would ask, as it did in its supplemental brief, to send the case back to the district court for sentencing in accordance with Both parties agree Johnson requires resentencing. Correct. With that, I'm happy to answer any further questions. All right. Thank you, Mr. Rand. Thank you very much. I do want to address, again, the issue of consecutive sentences because I think, Judge Neumeyer, that that is a piece of the statute that, I think, illustrates that the term of imprisonment at sentencing, that piece of the sentence is, in this case, the maximum is 10 months. As Your Honor was discussing, that in Mr. Barlow's case, you may have a 19-month sentence. You're probably misunderstanding my question. My question was trying to show that even if we were to go in the direction you have, which I'd even render the whole statutory scheme unconstitutional because it's not managed by the court under your scheme. It's managed apparently. You have to have the original sentence going to at least 19 months in order to have the Bureau of Prisons to be able to administer it. Otherwise, you would have to bring it back to the court to get the new sentence. But set that aside. I was assuming your argument, just giving you credit for your argument and pointing out that when you apply that 9 months, in the case of this particular defendant, you don't get it. It doesn't help you. And I think that that does go to the heart of it. And to be clear, that the 9-month post-release supervision, I do believe it's part of the sentence, the original sentence that was issued by the judge. It's the post-release supervision piece and not the term of imprisonment piece. But the way the statute works is that the second, third, however many, 9-month term or whatever the term of post-release supervision disappears. And if that's the maximum term of imprisonment, that just can't happen. It can't disappear. And so we are left, the district court judge is left, in Mr. Barlow's case, with a 19-month and a 10-month sentence. And in his case, when we were considering the question of whether he was an armed pervert criminal, were these separate occasions, if the judge determined they were separate occasions, then he's left with or he or she is left with the question of is one a felony and is one not. And that, Your Honor, I believe is the only reading of the Justice Reinvestment Act. But it's somehow the rest of the term disappears. And it just can't happen. What does the statute say about that? The statute says... Because that's what we're supposed to look at, right? Yes, Your Honor, that's exactly where you're supposed to look. The statute says the maximum prison sentence consists of the total of the maximum terms of consecutive sentences less 9 months for each of the second and subsequent sentences imposed for this class of felonies. So the rest of the maximum term of imprisonment simply vanishes. And one of the things that Congress has... Yes, ma'am. But we would just be following the statute. I mean, you know, we don't control how states write their statutes. They write them in all kinds of strange ways. We just follow them. Yes, Your Honor. And if the courts understand that that piece of maximum term of imprisonment disappears, then in Mr. Barlow's case he has one felony and one not predicate felony for purposes of 922G1. And Congress mandated that we don't look at what the labels are. We look at what is the term of imprisonment that this is a piece of sentence. But you just read me the term of imprisonment, and it was more than one year. And that is why, Your Honor, the labels don't matter so much as the way that the statute operates. So we have to ignore the judgment, too, because the judgment says on its face more than one year. Your Honor, it's not a question of ignoring the judgment, I believe. It's that the judgment is a form from the AOC. And the question isn't what does this judgment say. The question is what does the law say. Well, are these judgments inconsistent with the law? They are not. They don't lay out the way that the law actually operates. They're not nuanced, but judgments seldom are. All right. I think we understand the point. We'll come down and greet counsel and then proceed on to the next case. Thank you, Your Honor.
judges: Paul V. Niemeyer, Diana Gribbon Motz, M. Hannah Lauck